*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-074

JULY TERM, 2013

| | |
|---|---|
| In re A.M. and A.M., Juveniles | } APPEALED FROM: |
| | } |
| | } Superior Court, Washington Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 111/112-7-11 Wnjv |
| | |
| | Trial Judge: Walter M. Morris, Jr., (Ret.) |

In the above-entitled cause, the Clerk will enter:

Mother and father appeal the court's order terminating their parental rights to their daughters As.M. and Ay.M., born in June 2007 and June 2010, respectively. On appeal, mother and father argue that the court lacked sufficient evidence regarding the qualities of the parent-child bonds and the constructiveness of the parents' roles in the children's lives. We affirm.

In December 2010, the State filed petitions alleging that the children were without proper parental care due to chronic neglect from the instability of their parents' lifestyle. Because of parents' failure to follow through with recommended services and supports, they were living in unsanitary conditions and subject to eviction. The court transferred custody of the children to the Department for Children and Families (DCF), and DCF placed the children with their maternal great aunt and uncle.[*] Based on the parents' stipulation, the court found that the girls were children in need of care or supervision (CHINS) in April 2011. The initial case plan goal was reunification. The primary concerns were addressing parents' mental health issues and chronic homelessness.

In December 2011, the case plan goal changed from reunification to adoption, and petitions for termination were filed. During the intervening period, parents had trouble securing and maintaining housing. The longest period they succeeded in having adequate shelter was seven to eight months, but the rest of the time they were in temporary living situations primarily in the apartment of one friend with whom they had a contentious relationship. Father suffers from traumatic brain injury and post-traumatic stress disorder as well as serious depression and anxiety. He takes medication, but engages in no counseling. Father has a poor work history and has demonstrated an inability to maintain employment for any length of time. Father has exercised poor judgment in parenting. He blames others for his family's chronic homelessness. He does not accept responsibility for the family's circumstances, or for the children being removed from his care.

---

[*] As.M. was previously in DCF custody. She was removed from her parents' care at 3 1/2 months old and lived with her great aunt and uncle for fifteen months until being reunified with parents.

Mother has bi-polar and anxiety disorders. She previously was engaged in counseling, but her participation lapsed in the summer of 2012. She has been employed, but did not have a job at the time of the final hearing. Mother does not accept responsibility for the circumstances that have resulted in the children being removed from her care.

Neither parent completed a parent education program as recommended in the initial April 2011 case plan. Father failed to participate in a mental health assessment or counseling as recommended.

Following a termination hearing, the court found a change of circumstances based on parents' stagnation. Although the court noted that parents have a relationship with the children and continue to visit them, the parents have not made progress. Parents have not engaged in the case-plan goals. They have unresolved mental health issues and have failed to engage in services to address their chronic inability to maintain housing. Their inability to address personal issues has resulted in no improvement in the underlying circumstances that caused the children to be taken into custody.

As to the children's best interests, the court found that the children have a loving and beneficial bond with their foster parents, who wish to adopt them. The children are well adjusted in their foster home and have "flourished" in the care of the foster parents. The court explained that while the children visit regularly with parents, parents do not function as parents. The court also acknowledged that during the visits, parents play a constructive role in the children's lives. Nonetheless, the court found that the role was limited and parents were not making efforts to progress in their assumption of parental duties. Parents deny any responsibility for the circumstances that resulted in the children's removal and have not made progress to address those circumstances. The children have been in custody for over two years and are in need of a permanent, stable loving caretaker. The court found there was no likelihood that parents would be able to resume parenting within reasonable period of time, and that this outweighed any constructive role parents had in the children's lives. The court granted the petitions to terminate parents' residual rights. Both parents appeal.

Termination of parental rights involves a two-step analysis. As a threshold to altering the prior disposition, the court must consider whether there has been a substantial change in material circumstances. 33 V.S.A. § 5113(b). A change of circumstance occurs "when a parent's ability to care for a child has either stagnated or deteriorated over the passage of time." In re S.W., 2003 VT 90, ¶ 4, 176 Vt. 517 (mem.) (quotation omitted). If this threshold is satisfied, the court must then consider whether termination is in the child's best interests. 33 V.S.A. § 5114(a) (listing statutory best-interests factors).

The statutory factors guide the court's determination of the children's best interests. These factors include: (1) the child's interaction and interrelationship with her parents and foster parents; (2) the child's adjustment to her home, school and community; (3) the likelihood the parents will be able to resume parental duties within a reasonable period of time; and (4) whether the parent plays a constructive role in the child's welfare. 33 V.S.A. § 5114(a). The most important factor is whether a parent can resume parenting in a reasonable period of time. In re B.M., 165 Vt. 331, 336 (1996). "On appeal, we will affirm the trial court's findings in support of changed circumstances unless they are clearly erroneous, and we will affirm its conclusion if supported by the findings." In re S.W., 2003 VT 90, ¶ 4.

2

On appeal, parents argue that the court lacked evidence regarding the quality of the parent-child bonds and the constructiveness of the parents' roles in the children's lives as relevant to the best-interests analysis. Parents assert that there was insufficient evidence for the court to determine the nature of parents' bond with the children, and that this undermined the court's conclusion that the value of maintaining parent-child contact was outweighed by the parents' inability to resume parenting within a reasonable period of time.

We find no merit to this argument. The court considered each of the statutory factors, including factors (2) and (4) relating to the children's interaction and interrelationships with others, particularly the parents, and the nature of the role of the parents in the children's lives. The evidence showed a relationship existed between parents and the children, but also demonstrated that parents did not function as parents and had not progressed in their ability to care for the children. The evidence of parents' lack of engagement in services and failure to follow recommendations for counseling is evidence of this lack of progress and continued instability. The evidence supports the court's conclusion that parents had a very limited role in the children's lives, and were not making efforts to expand their role in the children's lives. They took no responsibility for the circumstances that led to the children being taken into custody, such as addressing their mental health issues and chronic homelessness. While they visited their children, they had not addressed their personal issues and thus were unable to provide the children with a safe and stable living environment. See In re M.B., 162 Vt. 229, 238 (1994) (explaining that demonstrated inability to provide stability relevant to determination of whether to terminate parental rights). This is not an evidentiary "vacuum" as parents describe. It was sufficient evidence for the court to ascertain the nature of the parent-child relationships and the constructiveness of the parents' roles in the children's lives. Most importantly, the evidence supports the court's finding that parents would not be able to resume parental responsibilities in a reasonable period of time, and that this factor outweighed any beneficial role parents had in the children's lives. See id. (noting that a parent-child bond must not be maintained "regardless of the cost to the child" and severance may be in the child's best interests).

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Brian L. Burgess, Associate Justice